MARY C. TARBERT and UPTON H. TARBERT, Her
Husband,

*vs.*

THORNTON ROLLINS, WILLIAM S. THOMAS, Trus-
tees, and WM. S. THOMAS, Individually, et al.

*Trusts*: *who may question validity of—; agreements as to—;*
*who may invoke equity to assume jurisdiction,*
*and to appoint new trustees.*

In general, the validity of a trust may be questioned only by
one who will be entitled to some interest in the property in
case the trust is declared invalid, and then only when not
estopped by limitations or laches.                    p. 426

Parties who agree for a good and valid consideration to co-
operate with other parties in having the validity of a certain
devise legally sustained and confirmed, and who have received
the consideration accordingly, have no standing in equity to
repudiate the obligation and attack the validity of such devise
and bequest.                                          p. 426

In this case, the court construes an agreement of certain par-
ties concerning their carrying out the provisions of a will, and
decides as to what property the agreement applies.  pp. 424-427

Parties who did not create the trust, are not the beneficiaries
under it, and are not charged with its execution and have no
interest in the trust property, have no ground upon which they
can ask a court of equity to assume jurisdiction of the trust, or
invoke the jurisdiction of the court for the appointment of a
trustee in the place and stead of one of the trustees appointed
by the will.                                          p. 427

Section 245 of Article 16 of the Code provides the method as to how a trustee who has accepted a trust may be released and discharged from its further execution.                p. 427

*Decided March 13th, 1917.*

Appeal from Circuit Court No. 2 of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph C. France* and *Walter H. Buck,* for the appellants.

*Vernon Cook* (with a brief by *Haman, Cook, Chesnut & Markell*), for the appellees.

THOMAS, J., delivered the opinion of the Court.

On the 6th of September, 1908, Miss Maggie V. Hugg, of Baltimore City, died, leaving a last will and testament, and a codicil thereto, by which she disposed of her entire estate, consisting of real and personal property, valued, according to the statement of counsel, at about $800,000.00. The will contains numerous items of bequests and devises to relatives and friends and for charitable purposes, amounting to considerable over $100,000.00, and the rest and residue of the testatrix's estate is devised and bequeathed to her cousin, William S. Thomas, of Baltimore City.

The testatrix left as her only next of kin and heirs at law the following first cousins on the side of her mother, viz: Mrs. Mary C. Tarbert and her brothers and sisters, J. William Strobel, Albert P. Strobel, Edgar R. Strobel, Mrs. Barbara S. Winks, Mrs. Helen S. Jacobs and Mrs. Nellie E. Clair, representing one branch of the family, and Mrs.

Azalia Thomas, mother of William S. Thomas, representing another branch, and a number of second cousins on the side of her father. Counsel for the appellants and appellees agree that if Miss Hugg had died intestate her first cousins on her mother's side would have taken each one-eighth of her personal estate, and that her real estate, valued at about $200,000.00, would have passed to her second cousins on the part of her father.

Caveats were filed to the will and codicil by J. William Strobel, one of the maternal first cousins, and by William S. Hugg and others, her paternal second cousins, and issues were sent to the Superior Court of Baltimore City for trial. The case came to trial on the 27th of October, 1909, and on the following day, according to the docket entries, "on account of sickness of a juror the jury was discharged and the case passed." Thereafter, on the 22nd day of December, 1909, William S. Thomas, the caveatee and the residuary legatee and devisee and executor under the will, and the first cousins of the testatrix on her mother's side entered into the following agreement:

"This Agreement, Made this 22nd day of December, in the year one thousand, nine hundred and nine, by and between William S. Thomas, party of the first part, and J. Wm Strobel and R. Lee Strobel, his wife; Albert P. Strobel and Harriet G. Strobel, his wife; Edgar R. Strobel and Mary G. Strobel, his wife; Barbara S. Winks and William M. Winks, her husband; Mary C. Tarbert and Upton H. Tarbert, her husband; Helen S. Jacobs and Horace L. Jacobs, her husband, and Nellie E. Clair and Lamuel Clair, her husband, parties of the second part:

"Whereas, the parties of the second part are contesting the validity of the papers offered for probate as the last will and testament and the codicil thereto of Maggie V. Hugg.

"And whereas, The party of the first part does declare that the said paper writing offered for probate

as the last will and testament and codicil of Maggie
V. Hugg are valid in every respect.

"And whereas, The party of the first part is residuary legatee, devisee and executor under said papers,
and all of the parties hereto are desirous of terminating any and all litigation in regard to the validity of
said papers and of agreeing upon the terms of a division of her estate in any event.

"Now, therefore, in consideration of the mutual
promises and agreements each made with the other,
and as accord and satisfaction of their differences regarding the disposition of the property of the late
Maggie V. Hugg. deceased, the parties hereto agree
as follows:

"1.  That all of the parties hereto will co-operate
in having the validity of said will and codicil of Maggie V. Hugg and all legacies and devises therein made,
sustained and confirmed in every particular, and especially the legacy and devise made to William S.
Thomas and Thornton Rollins, trustees, of the sum of
fifty thousand dollars ($50,000), and the farm at or
near Sykesville, in Howard and Carroll Counties,
Maryland, and the legacies and other devise made to
Zaidee T. Thomas (the devise being of a house and
lot known as No. 1302 Eutaw Place, Baltimore, Maryland), all of which said William S. Thomas, as residuary legatee, will confirm by appropriate deeds.

"2.  The party of the first part is to be allowed by
the Orphans' Court of Baltimore City and paid the
usual commissions as administrator *pendente lite,* and
upon the confirmation of the will and codicil, Albert
P. Strobel shall be joined with the party of the first
part in letters of administration *d. b. n. c. t. a.,* to be
granted to them, and commissions shall be allowed
and paid as the Orphans' Court may think proper,
provided that the total both for administration *pendente lite* and *d. b. n. c. t. a.* shall be the sum of twelve
thousand dollars ($12,000), and any amount above
this be waived; and the said commissions shall be so

allowed that Albert P. Strobel shall be paid twenty-five hundred dollars ($2,500) net as his portion of the commissions, and William S. Thomas will receive the balance for his services for acting as administrator.

"3.   It is further agreed, That William S. Thomas and Albert P. Strobel will be appointed administrators *d. b. n.* of the estate of any of the deceased brothers and sisters of the late Maggie V. Hugg where administration is necessary, and that the costs thereof will be charged to the general estate and paid thereout before the distribution herein made.

"4.   The party of the first part shall be allowed in the accounts to be passed in the estate of Maggie V. Hugg, deceased, all moneys paid out by him in settlement of any debts due by the deceased or contracted or paid out by him in burial or other expenses, and shall also be allowed such sums as have been contracted or paid out by him or for which he would be liable as administrator, whether contracted, paid, or the liability arises in connection with the real or personal estate of the deceased; he shall also be paid commissions for acting with Thornton Rollins as trustee of the real estate as may be allowed by order of the court for services already performed or to be performed, the court expenses and counsel fee to be fixed by court; there shall also be paid out of the estate the court costs in the courts of Baltimore City incurred in connection with the said estate.

"5.   The party of the first part is authorized to negotiate the best settlement possible with all the Hugg heirs on the *paternal* side, and is to turn over to them such an amount of money or such property of the estate as may be necessary in his judgment to effect a full settlement with them; such money or property to be charged one-half against the party of the first part and one-half against the parties of the second part in making the final division of the estate hereinafter set forth, or in his judgment he may contest the caveats filed to the said will and codicil.

"6. After making all the payments hereinbefore mentioned, and excluding the property mentioned in said will and codicil, the balance of the estate passing to the party of the first part under the residuary clause, if the will be sustained, or if not then in any event is to be divided one-half to the party of the first part and one-fourteenth each to J. William Strobel, Albert P. Strobel, Edgar R. Strobel, Barbara S. Winks, Mary C. Tarbert, Helen S. Jacobs and Nellie C. Clair, parties of the second part.

"7. In the event of a failure to effect a settlement with other claimants not parties hereto, it is understood that such failure shall not in any way affect the settlement hereby agreed upon between the parties hereto, and in such case whether, as a result of a contest with such other claimants, the said will and codicil be sustained or held invalid, in either case out of the amount received by any of the parties hereto, whether as legatee or as heir-at-law or next of kin, as the case may be, the same distribution and settlement shall be made between the parties hereto as agreed upon, upon the assumption that the will shall be sustained, the settlement in such event so made with the party of the first part to be considered as including the interest of Azalia H. Thomas, with whom the party of the first part will make settlement out of one-half of said estate transferred to him.

"8. It is agreed that for purposes of the adjustment to be made between the parties hereto, the estate of Maggie V. Hugg, deceased, shall be construed as including all property of every kind, real or personal, of which she was seized or possessed, or to which she was entitled, including all property of every kind to which the said Maggie V. Hugg, deceased, became in any way entitled by or through her deceased brothers and sisters, whether reduced to legal title and possession by her in her lifetime or not, especially including all property in which the said Maggie V. Hugg had a life interest, with undisposed remainder

or reversion in the heirs of her mother, or any of her ancestors or collateral relations, whether the said remainder or reversion be vested in the said Maggie V. Hugg so as technically to pass under her will or not.

"9. It is further understood and agreed that the parties of the second part do hereby jointly and severally agree to indemnify and save harmless the said party of the first part, his heirs, personal representatives and assigns to the extent of the net value of the estate transferred or passed to them by the said William S. Thomas against one-half the amount of any claims or demands that may be made upon him or them from any source, as residuary devisee or legatee under said will and codicil of the late Maggie V. Hugg, and do jointly and severally agree to unite with him in the defense of any such claim or demands and bear one-half the expense of resisting the same.

"10. In the event that any of the bequests under the said will should not be accepted, then the same are to be treated as part of the residuary estate.

"11. It is agreed that the parties hereto shall pay their respective counsel for all fees and expenses incurred in their behalf up to the time of the signing of this agreement.

"In testimony whereof, The parties hereto have hereunto signed and sealed this agreement the day and year first above written.

J. Wm. Strobel.        (Seal)

Albert C. Strobel,       (Seal)

Attys. for Brothers and Sisters.

Wm. S. Thomas.       (Seal)."

On the day the above agreement was executed, a jury was impanelled in the Superior Court of Baltimore City and rendered a verdict sustaining the will and codicil. The record was sent to the Orphans' Court, and on the following day, December 23rd, 1909, the Orphans' Court admitted the will and codicil to probate, and at the request of William S.

Thomas, made in pursuance of said agreement, letters of administration *c. t. a.* were granted to him and Albert P. Strobel. It also appears from the bill, answer and record in this case that William S. Thomas, in pursuance of the agreement, settled with all the paternal heirs of Miss Hugg, who, in consideration of the payment to them of the aggregate sum of fifty thousand dollars, conveyed and assigned to him by deed all their interest in the estate of the testatrix; that all of the legacies provided in the will were paid, and all the property devised and bequeathed, except the property devised in paragraphs 16 and 17 of the will, was disposed of as therein provided, and the entire balance of the estate, including the proceeds of sale of the two properties referred to in paragraphs 16 and 17 of the will, which the devisees refused to accept because of certain conditions attached to the devises, was distributed by the administrators, in accordance with the terms of said agreement, one-half thereof to Mrs. Tarbert and her brothers and sisters and the other half to William S. Thomas.

One of the items of the will, and the one to which this controversy relates, is as follows:

"Item No. 14—I give and devise unto Thornton Rollins and William S. Thomas as trustee and the survivor of them the heirs, administrators and assigns of the survivors the farm in the State of Maryland located in Howard and Carroll Counties and formerly belonging to my brother Marion, also the sum of fifty thousand dollars, in special confidence nevertheless, and to, for and upon the following uses and purposes, to wit: In trust to use the income arising therefrom after investing the same, in creating and maintaining in Howard County a home for orphan children, the said home to be known as the 'Hugg Home,' in memory of my sisters and brothers, and with full power to them and their successors in the trust to regulate the institution in every way possible, and also with full power to change the investments in which any of the trust funds may be invested, provided the same is

reinvested on the same trusts as are herein declared,
without it being obligatory in the purchaser or pur-
chasers to see to the application of the proceeds of the
purchase money. In memory of my deceased brothers
and sisters."

In August, 1915, Mrs. Mary C. Tarbert and her husband
filed a bill of complaint in the Circuit Court No. 2 of Balti-
more City against William S. Thomas and Thornton Rollins,
trustees, William S. Thomas individually, the administrators
*c. t. a.,* the other maternal first cousins, the paternal second
cousins and the unknown heirs of the testatrix, in which they
allege, in addition to the matters we have stated, that the
devise and bequest mentioned in paragraph 14 of the will
are "wholly void and of no effect," and that under the terms
of the agreement of December 22nd, 1909, the plaintiff, Mrs.
Tarbert, and her brothers and sisters are entitled to a one-
half interest in the farm and to one-half of the $50,000.00
mentioned in said paragraph of the will; that Thornton
Rollins and William S. Thomas, trustees, "have made no at-
tempt, by forming a corporation or otherwise, to carry out
whatever may have been the intention of the testatrix as pro-
vided in said paragraph 14, or attempted to establish the
home for orphan children therein referred to, but said named
trustees have limited their acts to the collection of income
from the property devised and bequeathed and the payment
of the taxes on the same." The eleventh paragraph of the
bill is as follows:

> "That, as hereinbefore stated, while your Orators
> charge and aver that the devise and bequest provided
> for in paragraph 14 of the last will and testament of
> the said Maggie V. Hugg are void and of no effect
> and, while it appears that the income from the fund
> therein provided for is wholly inadequate to support
> a charitable institution, yet, as hereinafter shown,
> your Orators desire this court's determination as to
> whether said alleged trust should in some manner be
> carried out and performed, and your Orators are un-

willing further to allow the said questions to remain
undetermined, and either desire to have said trust
fully performed or to have the one-half part of the
property, the subject of said alleged trust, delivered
to them under and by virtue of said agreement of De-
cember 23, 1909."

The bill prays (1) that the will, and particularly the 14th
paragraph thereof, and the agreement of December 22nd,
1909, be construed, and that a decree be passed determining
the parties entitled to the property mentioned in said para-
graph of the will, and (2) "Should this Court determine
that the said paragraph 14 of the last will and testament of
Maggie V. Hugg, deceased, is valid, or that the same should
be in some manner made effective, and should the said Thorn-
ton Rollins, one of the trustees named therein, desire to re-
tire from his said trusteeship, then that a decree may be
passed determining the objects and purposes of said trust and
the manner in which the same shall be administered and
appointing one of your oratrix, Mary C. Tarbert's, brothers
trustee in the place and stead of the said Thornton Rollins."

The brothers and sisters of Mrs. Tarbert answered the bill
admitting the allegations thereof, and three of the paternal
second cousins of the testatrix answered neither admitting
nor denying the averments in regard to the validity of the
devise and bequest in question. The record does not show
whether the bill was answered by the other heirs at law of
the testatrix, or by Thornton Rollins, trustee, but William S.
Thomas, in his own right and as trustee, filed an answer in
which he denies that the devise and bequest in paragraph 14
are void, and alleges that in view of the agreement of Decem-
ber 22nd, 1909, the plaintiffs have no right or standing in a
court of equity to attack said devise and legacy. He further
alleges that a small portion of the money received by the trus-
tees under the clause referred to has been used in making
necessary improvements on the farm, and that the balance has
been invested by the trustees and the interest allowed to ac-

cumulate; that he has always been ready, willing and anxious to carry out the wishes of the testatrix as expressed in said paragraph, but that the trustees have not yet founded the home for orphan children because of the difficulty of determining the best method of effectuating the intention of the testatrix, and whether the bequest was sufficient to enable them to establish and maintain the home; that after careful investigation and consideration he had concluded that the best course to pursue would be to form a corporation, to be known as the "Maggie V. Hugg Home for Orphan Children," with power to conduct a home of the kind mentioned in the will, and to convey and assign the property mentioned in said paragraph to said corporation; that the devise and bequest would be sufficient to enable such a corporation to carry out to some extent at least the desire and wishes of the testatrix.

Testimony was taken in open Court, and after argument of counsel, the Court below passed the decree dismissing the bill from which this appeal was taken.

Having set out the 14th paragraph of the will and the agreement of December 22nd, 1909, and having stated generally the other provisions of the will, it is not necessary to refer to the other evidence in the case, most of which has no bearing upon the question involved, further than to say that it shows that the trust property and funds have been carefully preserved by the trustees, and that Mr. Thomas disclaims any interest therein other than that of a trustee ready and anxious to carry out the wishes of the testatrix and to devote the property to the trust provided for in her will.

The theory upon which the bill was filed, and the contention of the appellants in this Court is that the devise and bequest are void, that a void trust can not be made valid by agreement, and that under the agreement of December 22nd, 1909, the plaintiff, Mrs. Tarbert, and her brothers and sisters are entitled to one-half of the trust property.

It is conceded that if the devise and bequest in question are void, the $50,000.00 mentioned in paragraph 14, under the terms of the will, which was admitted to probate, fell into the residue of the estate and passed under the residuary clause to William S. Thomas, while the real estate vested in the paternal second cousins of the testatrix as her heirs at law. *Dulany* v. *Middleton,* 72 Md. 67; *Rizer* v. *Perry,* 58 Md. 112. It must also be conceded that in order to maintain a bill of this kind the plaintiffs must allege and show their interest in the subject of the suit, or right to the thing demanded. *Miller's Eq. Proc.,* sec. 98 and notes; *Sellman* v. *Sellman,* 63 Md. 520; *Hamilton* v. *Traber,* 78 Md. 26; 39 *Cyc.* 90. In order to meet this requirement the appellants rely upon the agreement of December 22nd, 1909. When we turn to the agreement we find that the plaintiffs, and the brothers and sisters of Mrs. Tarbert, in consideration of the share of the estate they were to receive, and which they did subsequently receive from the administrators *c. t. a.,* expressly agreed in paragraph 1 that they would co-operate in having the validity of the will and codicil, and all legacies and devises therein made sustained and confirmed in every particular, "and especially the legacy and devise made to William S. Thomas and Thornton Rollins, trustees. of the sum of fifty thousand dollars ($50,000.00), and the farm at or near Sykesville, in Howard and Carroll Counties, Maryland." After providing for the payment of commissions to the administrators, costs and expenses of administration, debts of the deceased and the amount agreed upon in settlement with the paternal heirs of Miss Hugg, the agreement, in paragraph 6, then provides: "After making all the payments hereinbefore mentioned, and excluding the property mentioned in said will and codicil, the balance of the estate passing to the party of the first part under the residuary clause if the will be sustained, or if not then in any event is to be divided one-half to the party of the first part and one-fourteenth each to J. William Strobel, Albert P. Strobel,

Edgar R. Strobel, Barbara S. Winks, Mary C. Tarbert, Helen S. Jacobs and Nellie C. Clair, parties of the second part." In paragraph 10 the parties further agreed that: "In the event that any of the bequests under the said will should not be accepted, then the same are to be treated as a part of the residue of the estate."

It is clear from this reference to the terms of the agreement that the parties thereto never intended the plaintiff, Mrs. Tarbert, and her brothers and sisters to have any interest in the property mentioned in paragraph 14 of the will. In the agreement as to what should constitute the residue of the estate, in which the plaintiff was to share, "the property mentioned in said will and codicil" is expressly excluded, and it was only in case a bequest was not accepted that the amount or subject of the bequest was to become a part of the residue of the estate and subject to the division agreed upon.

The $50,000.00 mentioned in paragraph 14 of the will was paid to and accepted by the trustees, and the farm was conveyed to William S. Thomas, one of the trustees, in pursuance of the agreement between him and the paternal heirs of the testatrix.

It is urged on behalf of the appellants that the agreement, when properly construed, means that the plaintiff, Mrs. Tarbert, and her brothers and sisters were to receive one-half of the residue of the estate, after the settlement with the paternal heirs and the payment of the costs, debts, etc. But, as we have seen, the residue thus provided for was not to include the property mentioned in the several bequests and devises in the will, except in a case where the bequest or devise was not accepted, and that the parties to the agreement never intended the plaintiff to receive any part of the property mentioned in the 14th paragraph of the will is further evidenced by their agreement, in paragraph 1, to "co-operate" in having the validity of the legacy and devise "sustained and confirmed in every particular." This construction of the agreement can not be met by the suggestion that

the parties thereto never intended that William S. Thomas should hold the property mentioned in paragraph 14 in his own right. It was incumbent upon the plaintiff to show *their interest* in the subject of the suit. Moreover the record shows that the $50,000.00 is now held by the two trustees, and Mr. Thomas disclaims all interest in the property except as trustee.

It follows from what has been said that the plaintiffs have failed to show that they have an interest in the subject of the suit, or their right to maintain the bill for the purpose of having the devise and bequest declared void. But apart from this view, the plaintiffs in consideration of the share of the estate which Mrs. Tarbert was to receive, agreed to "co-operate" with the other party to the agreement "in having the validity of" the devise and legacy in question "sustained and confirmed." Having made this agreement, and having participated in the distribution of the estate accordingly, the plaintiffs can have no standing in a Court of equity to repudiate their obligation and attach the validity of the devise and bequest. It is said in 39 *Cyc.* 90 : "In general the validity of a trust may be questioned only by one who will be entitled to some interest in the property in case the trust is declared invalid, and then only when he is not estopped. Consequently strangers to the trust have no right to attack it. * * * The creator of a trust and his heirs may under some circumstances be estopped from questioning the validity of the trust. * * * Beneficiaries are also prohibited from claiming under the trust and at the same time asserting that it is invalid." In the case of *Long* v. *Long,* 62 Md. 33, the Court said: "It would certainly be against equity and conscience to allow them (the plaintiffs) to receive the money and also to recover the land for which the money was paid. That could not, upon any principle, be allowed. Having made their election to receive the money, they must be taken to have ratified the sale by which the money was, in part, produced. And that the sale was originally void, as to them,

can make no difference; for it is now perfectly well settled that sales either voidable or void may be ratified by the acts of the parties in interest. They may be ratified, either directly, or by a course of conduct which will estop the party from denying their validity; and especially so in a Court of equity." The same principle is recognized in *In re Richards' Trust Estate,* 97 Md. 608, where a bill was filed to set aside a deed of trust and where the Court held that the parties had ratified the trust, CHIEF JUDGE McSHERRY saying: "In the face of these emphatic acts of ratification it would be useless to further consider or discuss the averment of mistake."

As the plaintiffs have no standing in a Court of equity to have the devise and bequest in the 14th paragraph of the will declared void, and are estopped by their agreement from attacking the same, it is not necessary for the Court in this case to pass upon the validity of said trust. And as they did not create the trust, are not the beneficiaries of the trust, and are not charged with the execution of any part of it, and have no interest in the trust property, there is no ground upon which they can ask a Court of equity to assume jurisdiction of the trust, or invoke the jurisdiction of the Court for the appointment of a trustee in the place and stead of one of the trustees appointed by the will who may desire to retire from and resign the trust. The record in this case does not disclose an application by either of the trustees appointed by the will to be relieved of his trust, and sec. 245 of Art. 16 of the Code expressly provides how a trustee who has accepted a trust may be released and discharged from its further execution.

For the reasons stated, the decree of the Court below dismissing the bill of complaint must be affirmed.

*Decree affirmed, with costs.*