667 F.2d 420
 108 L.R.R.M. (BNA) 2975, 109 L.R.R.M. (BNA) 3310,
92 Lab.Cas. P 13,096,
2 Employee Benefits Ca 2057
 Donald E. BRINK and John F. Eline, Appellees,
v.
Leo DaLESIO, Defendant,
and
Alfred M. Bell, Appellant.
Donald E. BRINK and John F. Eline, Appellees,
v.
Leo DaLESIO, Appellant,
and
Alfred Bell, Defendant.
Donald E. BRINK and John F. Eline, Appellants,
v.
Leo DaLESIO and Alfred Bell, Appellees.
Donald E. BRINK and John F. Eline, Plaintiffs,
v.
Leo DaLESIO and Alfred Bell, Appellees,
and
Affiliated Teamsters Health and Welfare Fund of Maryland;
Teamsters Allied Pension Fund of Maryland and Allen R.
Holland, in his capacity as Trustee, Beneficiary and
Participant in both of the above funds, Appellants.
 Nos. 81-1085 to 81-1088.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 1, 1981.
Decided Nov. 5, 1981.
As Modified on Denial of Petition for Rehearing Jan. 19, 1982.
 
 Arthur L. Fox, II, Paul A. Levy, Washington, D. C. (Alan B. Morrison, Public Citizen Litigation Group, Washington, D. C., Theodore W. Hirsh, David L. Bowers, James N. Schuth, Edward F. Shea, II, Miles & Stockbridge, Baltimore, Md., on brief), for appellants and intervenors-appellants.
 Ransom J. Davis, Baltimore, Md. (H. Russell Smouse, Baltimore, Md., on brief), and Walter E. Dillon, Jr., Washington, D. C., for appellees.
 Before WINTER, Chief Judge, and BUTZNER and SPROUSE, Circuit Judges.
 WINTER, Chief Judge:
 
 
 1
 Plaintiffs, two members of Teamsters Local 311, sued (a) Leo DaLesio, the principal officer of both Local 311 and Teamsters Joint Council 62, (b) Alfred M. Bell, the administrator and insurance consultant for the Local 311 employee benefit trust funds, and (c) two of Bell's wholly-owned corporations, Alfred Bell, Inc. and Fund Administration, Inc. The object of the suit was to redress violations of fiduciary duties imposed on union officers and fiduciaries of employee benefit plans under § 501 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501 (LMRDA), the Fiduciary Responsibility provisions of the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101 et seq. (ERISA), § 302(c)(5) of the Labor Management Relations Act, as amended, 29 U.S.C. § 186(c)(5), and the common law.
 
 
 2
 After a trial consuming several weeks, the district court found that defendants had violated the fiduciary standards imposed on union officers and employee trust fund fiduciaries in many respects; but it held that plaintiffs lacked standing to remedy fiduciary violations on behalf of two of the employee benefit funds, and it denied plaintiffs the full monetary relief that they sought. It also declined to permit postjudgment intervention by two of the employee benefit funds after it held that plaintiffs could not represent their interests.
 
 
 3
 All parties have appealed. We hold that greater monetary relief, including prejudgment interest, should have been granted, that one of plaintiffs had standing to represent the interests of one of the employee benefit funds deemed to be unrepresented by the district court, and that, as to the other fund, deemed to be unrepresented by the district court, it was error to deny intervention. We affirm in part and reverse in part and remand for further proceedings.
 
 I.
 
 4
 The facts and decision of the case on its merits are set forth in the opinion of the district court in Brink v. DaLesio, 496 F.Supp. 1350 (D.Md.1980). The decision not to amend the judgment to include prejudgment interest and to deny postjudgment intervention is set forth in Brink v. DaLesio, 88 F.R.D. 610 (D.Md.1980). See also Brink v. DaLesio, 453 F.Supp. 272 (D.Md.1978), denying defendants' motions to dismiss, and Brink v. DaLesio, 82 F.R.D. 664 (D.Md.1979), on DaLesio's motion to dismiss or to limit evidence and request for a protective order and on plaintiffs' motions to compel discovery and to unseal certain documents. Since the factual findings of the district court, as distinguished from its conclusions of law, are largely undisputed, there is no need for us to state the facts beyond a preface and a summary statement of the context in which each contested legal issue arose.
 
 
 5
 Defendant Leo DaLesio was Secretary-Treasurer of Local 311, its chief executive officer, from 1964 to 1977. Defendant Alfred M. Bell, through his two wholly-owned corporations, Alfred Bell, Inc. and Fund Administration, Inc., performed consulting, administrative and insurance brokerage services for several union pension and welfare funds. Plaintiffs were both members of Local 311. They were participants in, and beneficiaries of, the Local 311 Pension Fund; and when suit was filed, they were participants in, and beneficiaries of, the Local 311 Health and Welfare Fund (later the Affiliated Fund), but not members of, or participants in, the Allied Pension Fund.
 
 
 6
 The evidence showed that DaLesio caused a trust fund (the Severance Fund) to be established to provide payments to him when he ceased his employment as Secretary-Treasurer. Payments by Local 311 into the Severance Fund were increased from time to time. DaLesio was furnished a late-model, fully-equipped Cadillac automobile and virtually all of its operating expenses at the expense of Local 311, plus a monthly automobile allowance contributed by Teamsters Joint Council 62. In addition to his salary, DaLesio received a tennis club membership, season tickets to professional football games and a daily dining allowance at the expense of Local 311.
 
 
 7
 Defendant Bell was chosen by DaLesio as the administrator and insurance consultant for four employee trust funds sponsored by Local 311. Bell charged the funds a percentage of the employer contribution as a fee for his services, and unknown to anyone other than DaLesio, he also contracted to represent the adverse interests of several insurance carriers which provided insurance to underwrite the funds and accepted commissions from them, the commissions being charged by the carriers to the funds in addition to the established premium. Bell provided DaLesio with the year-round use of a seashore condominium and paid all of the costs of maintaining it, including monthly telephone and cable TV charges, beginning at the time that DaLesio rented office space for Local 311 in a building owned by Bell at an exorbitant rent.
 
 
 8
 We will state other facts in connection with the legal issues to which they relate. We therefore proceed directly to the consideration of those issues.II.
 
 The Severance Fund
 
 9
 The Severance Fund was established in 1966. As we have said, its purpose was to provide compensation to DaLesio whenever he ceased his employment as Secretary-Treasurer of Local 311. Initially the union contributed $200 per week to the fund in addition to the salary paid to DaLesio. The amount of contribution was increased from time to time until it reached $500 per week in 1974. By 1977, when this litigation was instituted, the balance in the fund was approximately $250,000.
 
 
 10
 Plaintiffs contend that DaLesio violated § 501 of LMRDA in promoting the establishment of the fund as well as in securing later increases in union contributions. DaLesio contends he never violated § 501. The district court found no violation in the establishment of the fund, but ordered DaLesio to return amounts attributable to the later increases on the ground that he secured approval of such increases without making adequate disclosures to the union's Executive Board. Section 501(a) of LMRDA provides:
 
 
 11
 The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization....
 
 
 12
 29 U.S.C. § 501(a). The section thus constitutes union officials trustees and requires them to act in conformity with the union constitution and bylaws. It assigns to the federal courts the duty to fashion a body of federal law defining the fiduciary duties of union officers. Cf. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 450-51, 77 S.Ct. 912, 914-915, 1 L.Ed.2d 972 (1957). As is ably developed in Morrissey v. Curran, 650 F.2d 1267, 1272-73 (2d Cir. 1981), union officials are trustees "in the special labor context" which is to say that Congress intended "minimum interference in the internal affairs of unions." In cases where a union official profits personally through the use or receipt of union funds, however, the official bears the burden of proving that the transaction was validly authorized in accordance with the union's constitution and bylaws after adequate disclosure, and that it does not exceed a fair range of reasonableness, see id. at 1274-75.
 
 
 13
 With regard to the several increases in union contributions to the fund, the district court found as a fact that Executive Board approval for those increases was obtained without full disclosure. 496 F.Supp. at 1361-62. That conclusion must stand because it is not clearly erroneous. At the time DaLesio obtained approval of the increases, Executive Board members were unaware of the total level of contributions to the fund. Moreover, union financial statements prepared at DaLesio's direction lumped Severance Fund contributions with pension contributions so that union members were misled as to the size of the former. Finally, the district court found that the size of the contributions when increased beyond the initial level of $200 per week so far exceeded a reasonable level of compensation as to imply fraud, mistake or duress. Id. at 1362.
 
 
 14
 With regard to the initial approval of the fund in 1966, the district court found that the Executive Board and the Local 311 membership approved the plan after adequate disclosure. Id. at 1361. In our view the evidence supports that finding. The amount of union contributions was disclosed, and Executive Board members testified that they approved the plan because they felt DaLesio had done an excellent job.
 
 
 15
 Plaintiffs argue that approval of the Severance Fund was tainted by the passage in 1964 of amendments to Local 311 bylaws which granted the Board power to authorize such a fund. The district court found as a fact that the 1964 amendments were conceived of and promoted by DaLesio in anticipation of his assuming the position of Secretary-Treasurer. Id. at 1360. The amendments authorized the Executive Board to provide for retirement benefits for union officers. Of equal importance, they authorized the Secretary-Treasurer to fix the salaries of all union officers and employees. The latter provision enabled DaLesio to exercise significant influence over the individuals whose votes were necessary to approve his own salary and benefits.
 
 
 16
 The amendments were approved by vote of the union membership after DaLesio had represented them as modeled after a set of proposed bylaws suggested by Teamsters International. This was true of the provision authorizing the Executive Board to provide for retirement benefits for union officers. The provision empowering the Secretary-Treasurer to set salaries of other union officers represented a departure from the model proposed by the International, however, and the district court found that DaLesio failed to disclose this fact to the membership:
 
 
 17
 (T)here is no indication that the substantial departures from the (International's) model bylaws were disclosed or explained. Given DaLesio's incipient personal interest in these provisions, this failure was critical. It certainly violates the spirit, if not the letter of § 501's admonitions against self-dealing as well as its policy in favor of disclosure.
 
 
 18
 Id.
 
 
 19
 After noting these reservations regarding the 1964 amendments, the district court nevertheless found the 1966 Executive Board approval of the Severance Fund valid without discussing the impact of the 1964 amendments on the process of approval. Despite this omission, we think that the district court's conclusion is correct. The district court heard the testimony of Executive Board members and credited their statements that they approved the fund because they honestly believed DaLesio had done a good job. Accepting this testimony as true, the district court could properly conclude that DaLesio's leverage over the Board, gained as a result of his misrepresentation in 1964, was not a factor in the Board's approval of the fund.
 
 
 20
 Finally, plaintiffs argue that the district court was in error in approving the initial $200 weekly contribution to the Severance Fund on the ground that DaLesio had failed to prove that the contribution was fair and reasonable. Plaintiffs argue that the district court erroneously concerned itself solely with the question of whether full disclosure had been made and whether establishment of the fund and the initial contributions were authorized. We do not agree. We read the opinion of the district court, in its discussion of the unreasonableness of the contributions when increased, implicitly to hold that the initial $200 weekly contribution was not unreasonable and that it did not exceed the level at which a court, under § 501(a) of LMRDA, should intervene to substitute its judgment for that of authorized union officials and members. See Morrissey v. Curran, supra, 650 F.2d at 1273-74. In this respect we do not think that the district court's finding of fact is clearly erroneous, and the legal standard it applied cannot be faulted.
 
 
 21
 Thus we conclude that with regard to the aspect of its decision relating to the Severance Fund, the district court's judgment should be affirmed.
 
 III.
 
 22
 The Rental of Office Space for Local 311 from Bell
 
 
 23
 In 1974, Local 311 moved its offices to a building owned by Bell and it occupied this space until 1978. Prior to the move, rental costs for Local 311 were $390 per month ($2.50 per square foot per year). Under the lease which DaLesio negotiated with Bell, Local 311 agreed to pay rent of $944 per month ($6 per square foot per year), and it spent $8,847 on renovations to make the new offices suitable, raising to $7.31 the effective yearly charge per square foot over the period that Local 311 occupied the premises. At the time that DaLesio negotiated this lease, Bell bought the seashore condominium, the use of which he furnished to DaLesio without charge. As the district court found, no union official was advised or knew that the condominium used by DaLesio was owned by Bell. 496 F.Supp. at 1365.
 
 
 24
 The district court also found, correctly we think, that "(m)easured under an objective standard of reasonableness, it is apparent that DaLesio breached his fiduciary duty in negotiating for the rental of office space ..." Id. at 1366. However, the district court ruled that the burden rested on plaintiffs to prove the extent of the loss sustained by Local 311; and, because it deemed the proof inadequate, it awarded damages of only $1. Id. at 1366-67. We think the district court's ruling as to monetary relief was erroneous.
 
 
 25
 The unarticulated premise of the district court's ruling as to monetary relief was that the burden was on plaintiffs to prove the damage sustained by Local 311. The law is to the contrary. It is generally recognized that one who acts in violation of his fiduciary duty bears the burden of showing that he acted fairly and reasonably. See, e.g., Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425 (1921); Nedd v. United Mine Workers, 556 F.2d 190, 210-11 (3d Cir. 1977). The effect of the rule is to place on DaLesio the burden of proving that the rent that he negotiated and caused Local 311 to pay was fair and reasonable under all of the circumstances. The plaintiffs are entitled to a judgment for whatever portion of the rent the defendant cannot so vindicate.
 
 
 26
 We therefore affirm the district court's determination of liability with respect to the breach of DaLesio's fiduciary duty in negotiating the lease for the office space but vacate the nominal damages which it allowed, remanding this aspect of the case for further proceedings to assess damages consistent with this opinion.
 
 IV.
 Standing and Intervention
 
 27
 In this appeal the correctness of the district court's holding that neither plaintiff had standing to represent the interests of the Affiliated and Allied Funds is contested, as is its ruling that after judgment these two funds should not be permitted to intervene as parties plaintiff. These procedural questions are important because Bell was found by the district court to have breached his fiduciary duties with respect to these two funds, as well as two others, both under ERISA (for the period following its enactment-January 1, 1975) and under the common law of Maryland (for the period prior thereto). The questions are so interrelated that they will be considered together. We begin with a description of the various funds that Local 311 established and maintained over the operative period.
 
 
 28
 Originally, Local 311 sponsored two employee benefit funds, one for health and welfare, the Teamsters Affiliated Health and Welfare Fund of Maryland (Affiliated Fund), and the other for retirement, the Allied Pension Fund of Maryland (Allied Fund). When DaLesio became a trustee of these funds in 1963, Bell became a consultant, and the proof showed that he was paid a consultant's fee, based upon a percentage of the employers' contributions to the fund, secretly received a commission from the insurers who sold coverage to the funds, and agreed to represent their interests in an adversarial capacity.
 
 
 29
 About three years later, in response to pressure from tank-haul motor carriers to have employer representation on the funds, Local 311 created two new, much smaller employee benefit plans for tank-haul employees. These were known as the Local 311 Health and Welfare Fund and the Local 311 Pension Fund. These new funds inherited not only some of the Allied and Affiliated Fund participants but also, as the district court found, "the pattern of administration, set up by the trustees of those funds in conjunction with Bell," 496 F.Supp. at 1372. At the time that suit was brought, plaintiff Brink was a participant and beneficiary of the Local 311 Health and Welfare Fund and the Local 311 Pension Fund. He had no association with the Affiliated Fund or the Allied Fund at that time. Plaintiff Brink became disabled after suit was filed, and he was forced to retire. Thus he ceased membership and participation in the Local 311 Health and Welfare Fund but he continued to be a beneficiary of the Local 311 Pension Fund. Effective September 1, 1978, the Local 311 Health and Welfare Fund was merged back into the Affiliated Fund but the Local 311 Pension Fund was not merged back into the Allied Fund.
 
 
 30
 Plaintiff Eline, who intervened as a party plaintiff in April, 1980 was then a participant and beneficiary of the Local 311 Pension Fund, and as a result of the merger of the Local 311 Health and Welfare Fund into the Affiliated Fund which had taken place in 1978, he was also a participant and beneficiary of the latter. He has not, however, ever been a participant and beneficiary of the Allied Fund.
 
 
 31
 A. Standing.
 
 
 32
 The district court ruled that neither plaintiff had standing to assert any claims of Allied and Affiliated Funds against DaLesio and Bell, because neither was a participant in those funds at the time that suit was instituted. Accordingly the district court awarded judgment only for breaches of fiduciary duty to the Local 311 funds, even though its findings regarding Bell's breaches of duty applied as well to the Allied and Affiliated Funds. It should be noted that the issue of standing was one raised by the district court and not by defendants and the issue of standing was decided only when the district court decided the case on the merits. It should be further noted that because the issue of standing was not resolved until after trial, evidence concerning breaches of trust with respect to the Affiliated and Allied Funds was admitted in the course of the trial.
 
 
 33
 We think that the district court was correct in its ruling that neither plaintiff had standing to litigate claims of the Allied Fund, but we conclude, contrary to the district court's holding, that Eline had standing to assert claims of the Affiliated Fund both under ERISA and under the common law. Eline was a participant and beneficiary of the Affiliated Fund at the time that he intervened in the suit, and he remained such until the case was decided. The crucial time for determining standing was the time of intervention and not, as the district court thought, the time that suit was originally instituted. Eline's suit was not for money damages for himself but recovery for the fund of which he was a beneficiary for the benefit of all participants and beneficiaries.
 
 
 34
 The applicable provision of ERISA, 29 U.S.C. § 1132(a)(2), permits a beneficiary to sue on behalf of a plan to enforce the liability imposed on a fiduciary by 29 U.S.C. § 1109 for losses to the plan resulting from a breach of fiduciary duty. ERISA is, of course, a remedial statute and should be given a liberal construction in order to carry out the vitally important public policies of protecting the integrity of employee benefit plan assets and of deterring fiduciary violations. Marshall v. Snyder, 430 F.Supp. 1224, 1231 (E.D.N.Y.1977), aff'd, 572 F.2d 894 (2d Cir. 1978). While, as the district court pointed out, 496 F.Supp. at 1372, a number of cases have denied standing to sue under ERISA, standing has never been denied to a participant in and beneficiary of a fund who, moreover, seeks to recover funds for the plan rather than for himself. To deny standing to one in such circumstances who seeks such relief would, in our view, contravene the very language of § 1132(a)(2).
 
 
 35
 The only conceivable basis for denying such standing is the fact that most if not all of the alleged breaches of fiduciary duty occurred before the plaintiff obtained a direct interest in the fund. But we reject this as a reason for denying standing under ERISA. This may be a good reason for denying standing in a derivative stockholders' suit, see Fed.R.Civ.P. 23.1, but it should play no part in a suit under § 1132(a)(2). Congress has not expressly adopted such a limitation on the right to sue under ERISA, the rationale of Rule 23.1 to prohibit champertous litigation and strike suits is inapposite to suits under § 1132(a)(2), and the adoption of such a limitation would frustrate the broad remedial objectives of ERISA.
 
 
 36
 Similarly, we think that Eline had standing under the common law to assert breaches of trust occurring prior to the time that ERISA was enacted. As the district court recognized, 496 F.Supp. at 1374, the general rule is that "... a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust." Restatement (Second) of Trusts § 200 (1959). Maryland recognizes that a beneficiary of a trust has standing to enforce a trust. Tarbert v. Rollins, 130 Md. 413, 100 A. 637 (1917). We have stated that, at the time of intervention, Eline was a participant and beneficiary of the Affiliated Fund. As a beneficiary, Eline thus had standing to enforce defendants' fiduciary duties to the fund and to seek redress for any breach thereof. We think that it makes no difference that the breaches of trust occurred before Eline became a beneficiary.
 
 
 37
 B. Intervention.
 
 
 38
 Because we conclude that Eline did have standing to assert the claims of the Affiliated Fund for breach of trust, we need not consider whether the district court abused its discretion in denying leave to the Affiliated Fund to intervene after judgment was rendered. We confine our consideration to the denial of permission to the Allied Fund to intervene after judgment. A cardinal consideration of whether to permit intervention is the timeliness of the application therefor. See Fed.R.Civ.P. 24. While a district court has wide discretion in concluding that an application for intervention is timely or untimely, we are constrained to hold that that discretion was abused with respect to the application of the Allied Fund. We reach this conclusion for the reasons which follow.
 
 
 39
 While as the district court said in denying intervention, the Allied Fund did not seek to intervene before judgment even though it recognized problems of the plaintiffs' standing, 88 F.R.D. at 612, the lateness of its application is completely explainable. Standing was made an issue by the district court and not by the defendants, and the issue of standing was not decided until the case was decided on the merits. In this case, plaintiffs sued in a representational capacity, and in a class action the members of the class which are represented have the right to rely on their representatives until the court rules otherwise. United Airlines v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); American Pipe and Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Thus it can hardly be said that the Allied Fund's petition for leave to intervene was not timely under the circumstances.
 
 
 40
 Unquestionably, if its petition was timely, Allied Fund had a right to intervene under the requirements of Rule 24(a), since its rights were being litigated. This, too, is an important fact in the equation of a proper exercise of discretion. Because intervention was of right, the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive.
 
 
 41
 Finally, we think that defendants would not be prejudiced by the grant of leave to intervene. Defendants would not be prejudiced because the suit was tried as if Allied Fund's rights would be adjudicated on their merits; the issue of standing was not decided until the district court issued its opinion on the merits. Presumably all of the evidence against defendants and all of evidence in their defense is already part of the record. If the denial of intervention is upheld, on the other hand, Allied Fund may well be prejudiced. As a minimum it would be required to file a new lawsuit and to retry issues that, in the view of the district court, have already been thoroughly litigated. More significant may be its inability to defend itself successfully against pleas of limitations or laches in the new suit by reason of the fact that it relied on plaintiffs to vindicate its rights.
 
 
 42
 Under all of the special circumstances of this case, we think that the timeliness requirement of Rule 24(a) was amply met; and notwithstanding the general policy to discourage postjudgment intervention, Black v. Central Motor Lines, Inc., 500 F.2d 407, 408 (4th Cir. 1974), this is a case where the district court exceeded its permissible discretion in denying intervention.
 
 
 43
 We therefore vacate the portion of the district court's judgment denying standing to plaintiff Eline to litigate and redress the rights of the Affiliated Fund against defendants and the request of the Allied Fund to intervene and protect its rights. We remand the case to the district court for further proceedings in this regard and empower the district court to receive further evidence on the merits of the claims if it be so advised.
 
 V.
 Prejudgment Interest
 
 44
 Although plaintiffs requested the district court to award prejudgment interest on any amounts that it found were wrongly appropriated by defendants and although the district court found extensive misappropriations, it made no provision for prejudgment interest in the monetary relief that it granted. Plaintiffs' postjudgment motion for modification of the judgment to include prejudgment interest was denied without comment.
 
 
 45
 We think that it was error for the district court not to allow prejudgment interest. ERISA, 29 U.S.C. § 1109, clearly states that a fiduciary who breaches his trust "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate ..." The loss of the use of monies wrongfully diverted from an employee benefit plan is certainly a loss to the plan. Moreover, it is a general principle that a fiduciary is liable not only for profits or losses caused by a breach of duty but also for simple interest at the legal rate running from the time of the breach. See Restatement (Second) of Trusts § 207 (1959); Scott, Law of Trusts § 207 (3d ed. 1967); Bogert, Trusts and Trustees § 863 (2d ed. 1965). Indeed, the authorities recognize that in some instances a trustee may be required to pay compound interest, see, e.g., Restatement (Second) of Trusts, supra, § 207(2), but we do not deem this such a case.
 
 
 46
 We therefore require the district court on remand to augment the money judgments which it granted by prejudgment interest at the legal rate running from the date of each breach of trust. The district court in entering any other judgments on remand pursuant to other parts of this opinion should make a similar allowance.
 
 VI.
 Miscellaneous Contentions
 
 47
 The parties advance a number of other contentions, none of which we believe requires extended discussion. We agree with the district court that Bell was an agent for the insurers when he collected premiums from the funds, so that any breach of duty to remit them to the insurers promptly might give rise to a cause of action by the insurers but gives rise to no cause of action by plaintiffs.
 
 
 48
 In defendants' remaining contentions we see no merit. The legal conclusion of the district court that, under the facts as found, defendants were both guilty of flagrant breaches of fiduciary duty is correct, and its further conclusions that Bell should be held personally liable and that DaLesio should be held jointly liable with Bell cannot be faulted.
 
 
 49
 On remand the district court in fixing attorneys fees should include an allowance for the services of plaintiffs' counsel in this appeal.
 
 
 50
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.