TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS, LO-
CAL 764, Plaintiff,

v.

Charles GREENAWALT,
et al., Defendants.

No. 4:CV–93–1992.

United States District Court,
M.D. Pennsylvania.

March 24, 1995.

John J. Dunn, Sr., Christy Concannon, and Robert M. Baptiste, Scranton, PA, for plaintiff.

Paul W. Reeder, McCormick Law Offices, Williamsport, PA, Wendy D. Bowie and Ira

H. Weinstock, Ira H. Weinstock, P.C., Harrisburg, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

This action arises under section 501 of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA)[1] and state common law. Plaintiffs challenge the receipt by Charles Greenawalt, former President of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 764 (Local 764 or the union) of "severance pay" which they allege to be improper and in violation of union bylaws. Plaintiffs also challenge the conduct of former union counsel, Ira Weinstock, Esq.,[2] whom they allege advised the union that the challenged conduct was proper. Plaintiffs seek the return of $11,989.00 for cash and property allegedly improperly given to Greenawalt as "severance pay" based upon the improper and erroneous legal advice of Weinstock.

Plaintiffs allege that defendants violated Local 764 bylaws in several respects. According to plaintiffs' allegations, unlike any union officer or agent who preceded him at Local 764, defendant Greenawalt received what was denominated "severance pay" in the form of an automobile. The automobile which plaintiff received was the one assigned to him for his use during his tenure as president of Local 764. After plaintiffs questioned the propriety of the transfer, defendants Greenawalt and Weinstock arranged to effect the transfer by estimating the market value of the automobile, having the union give Greenawalt a check for that amount, plus transfer taxes, and federal, state and local tax on the amount he received. Greenawalt then endorsed the check over to the union as payment for the automobile. There was no mention of the cash transaction in the

Executive Board minutes, nor was it ever approved by the Executive Board or the membership at large.

Plaintiffs allege that this transfer was a violation of section 15(c) of Local 764's Bylaws, which provide that "in such instances where the Local union provides an automobile [to a union representative or officer], title to the automobile shall remain at all times in the name of the Local Union."[3] They also allege the violation of section 15(d) of the local bylaws, which state that the Local Executive Board may provide benefits for the officers, but that "any such benefit adopted by the Executive Board shall be specifically set forth in the Minutes of the Executive Board meetings." Plaintiffs also challenge the valuation placed on the automobile transferred to Greenawalt as unrealistically low.

Repeated requests by the union for the return of the automobile and the cash fell on deaf ears. In a letter dated December 27, 1991 prepared by union counsel, Local 764 informed Greenawalt that the transaction was a violation of the local bylaws, had been found to be so in other cases, and characterized the entire transaction as an attempt to defraud union officers and the membership.

Plaintiffs' complaint was accompanied by a verified application for leave to proceed under section 501 of LMRDA. In an order dated May 23, 1994,[4] this court denied plaintiff's application on the merits as to the union members and denied the request as moot as to the union. The court found that no prior approval was required from this court to permit the union to proceed with the claims asserted.[5]

That ruling was made *ex parte* before the defendants were served and is now challenged by defendants in a Rule 12(b) motion to dismiss.[6] Defendants seek dismissal of

---

1. 29 U.S.C. §§ 401–531.

2. Also named as a defendant is Weinstock's law firm, Ira Weinstock, P.C.

3. Plaintiffs indicate that this is a standard bylaw provision recommended for inclusion by the international union.

4. Record document no. 2.

5. The union members' application for leave to proceed under section 501 was denied on the basis of the pendency of the union's claim.

6. Record document no. 3.

this action on several grounds: 1) lack of standing to file under section 501 of LMRDA; 2) preemption of state law remedies; and 3) untimeliness. For the reasons which follow, defendants' motion will be denied.

Also before the court are: a Rule 11 motion for sanctions filed by defendants (record document no. 11); and a motion by plaintiff for leave to file a sur-reply to defendants' reply brief filed in support of their Rule 12(b) motion (record document no. 13). For the reasons which follow, both motions will be denied.

## DISCUSSION

### Rule 12(b)(6) motion

 In deciding defendants' motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

### Section 501 standing

 Defendants seek the dismissal of this action on the ground that the union lacks standing to file an action against one of its officers for the alleged breach of fiduciary duty. Plaintiff is asserting a violation of section 501(a). Section 501(a) imposes upon the officers of all labor organizations a duty

to hold the organization's money and property "solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws." 29 U.S.C. § 501(a). If a union official "profits personally through the use or receipt of union funds, ... the official bears the burden of proving that the transaction was validly authorized in accordance with the union's constitution and bylaws after adequate disclosure, and that it does not exceed a fair range of reasonableness." *Brink v. DaLesio,* 667 F.2d 420, 424 (4th Cir.1981), citing *Morrissey v. Curran,* 650 F.2d 1267, 1274–75 (2d Cir.1981).

 Remedies and rights for the violation of section 501(a) are set forth in section 501(b). Only union members are expressly authorized to sue in federal court for an alleged section 501 violation. 29 U.S.C. § 501(b).[7] Left open, however, under section 501, is the basis for federal jurisdiction over an action filed by the union in federal court. There can be no doubt but that the union has the right to bring an action to enforce section 501(a). Section 501(b) itself admits that possibility. Further, when individual union members sue under section 501, they are suing derivatively " 'for the benefit of the labor organization.' " *Nellis v. Air Line Pilots Association,* 815 F.Supp. 1522 (E.D.Va. 1993), citing 29 U.S.C. § 501(b). See also: *Building Material and Dump Truck Drivers, Local 420 v. Traweek, (Traweek),* 867 F.2d 500, 506 (9th Cir.1989) (Plaintiff in section 501 suit "acts in a representative capacity for the benefit of the union and on behalf of the union.")

 What is less clear is the basis for federal subject matter jurisdiction over a section 501(a) action filed by the union. In our

---

7. The right to do so is, however, made dependent upon plaintiff union members: 1) establishing that they sought to have the labor organization bring an action or recover damages or perform an accounting or obtain other appropriate relief, but the request was refused; and 2) obtaining leave of the court "upon verified application and for good cause shown."

In our prior order, we denied the union members' petition for leave to proceed under section 501(a) on the basis of the pendency of the union's claim for the same cause of action. See,

e.g., *Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654, 666 (7th Cir.1992). We note here that were it not for the joinder of the union in the same case, we would have found that all prerequisites satisfied and allowed the union members to proceed with this action.

Some courts have taken the view that joinder of the union and its members as plaintiffs in the same section 501(a) action is proper. Although we declined to adopt that approach in this action, we agree that it is not improper.

prior opinion, we reviewed three possible bases for such jurisdiction: 1) LMDRA section 501(b); 2) section 301 of the National Labor Relations Act of 1947, 29 U.S.C. § 185; and 3) section 501(b) in conjunction with the general grant of jurisdiction conferred by 28 U.S.C. § 1337.

Rejecting the first two as jurisdictional bases for various reasons, we concluded that section 501(b) of LMRDA, in conjunction with section 1337, does, in fact, permit the union to maintain this action in federal court.

Section 1337 confers on federal district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce." 28 U.S.C. § 1337. With one exception not relevant here, there is no jurisdictional amount. LMRDA has been held to be "an 'act of Congress regulating commerce' within the meaning of § 1337,'" such that suits arising under it can be brought in federal court. *Operative Plasterers & Cement Masons v. Benjamin, (Benjamin),* 776 F.Supp. 1360, 1364 (N.D.Ind.1991), quoting *Bachowski v. Brennan,* 502 F.2d 79, 83 (3d Cir.1974), *reversed on other grounds, sub nom., Dunlop v. Bachowski,* 421 U.S. 560, 564, 95 S.Ct. 1851, 1856, 44 L.Ed.2d 377 (1975).

On the strength of the Third Circuit's endorsement of the section 1337 "arising under" basis for jurisdiction in *Bachowski, supra,* 502 F.2d at 82–83, we concluded that the court would find that such jurisdiction exists over LMRDA section 501 claims. On appeal, in *Bachowski, supra,* the United States Supreme Court reversed the judgment entered by the Third Circuit, but agreed, without analysis, with the Third Circuit's conclusion on the jurisdictional question, stating: "We agree that 28 USC § 1337 ... confers jurisdiction upon the District Court to entertain respondent's suit." See also: *Benjamin, supra,* 776 F.Supp. at 1365 ("A suit by a union for breach of the duty created in its favor by a federal law [under section 501(a)] 'arises under' federal law as defined by 28 U.S.C. § 1337.").

Defendant challenges this court's reliance on *Bachowski, supra,* 502 F.2d at 82–83, on the ground that that action, unlike the present suit, involved a claim under section 402 of LMRDA, 29 U.S.C. § 482(b), to set aside a union election. Defendant argues that that distinction renders the holding inapplicable. We reject that argument as unsupported. Both sections are part of the 1959 legislation mandating reporting and disclosure of union affairs, the only difference being that LMRDA section 402 regulates the reporting of union elections, whereas section 501 prohibits union officials from dipping into union coffers. We see no valid basis for distinguishing one section from the other in terms of determining whether federal jurisdiction exists.

General principles governing federal question jurisdiction compel the same result. Section 1337 and section 1331 [8] share the same criteria for establishing federal jurisdiction, i.e. the "arising under" requirement. Cases interpreting one are equally applicable to the other. *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983) ("[W]e have not distinguished between the 'arising under' standards of § 1337 and § 1331.")

■ The prerequisite for finding federal question jurisdiction is a private remedy for a violation of a federal statute. *Smith v. Industrial Valley Title Insurance Co.,* 957 F.2d 90, 93 (3d Cir.), *cert. denied sub nom. Com. Land Title Insurance Co. v. Burns,* —— U.S. ——, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992). As discussed above, section 501 explicitly confers on union members the right to enforce section 501(a) in federal court. Implicit in the same section is the right of the union to assert the same cause of action.

In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the United States Supreme Court listed the factors which determine whether an implicit private cause of action exists under a federal statute: 1) whether plaintiff is a member of the class

---

**8.** Section 1331 provides that:
 The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.
28 U.S.C. § 1331.

of persons for whose special benefit the statute was enacted; 2) whether there is an indication of legislative intent either to create a remedy or to deny a remedy; 3) whether a cause of action would be consistent with the legislative scheme; and 4) whether the cause of action is one traditionally relegated to the states. *See also Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 810–11 n. 8, 106 S.Ct. 3229, 3233 n. 8, 92 L.Ed.2d 650 (1986) and cases cited therein.

The union is clearly a member of the class which section 501 is intended to benefit. As we noted above, even when a section 501 action is filed by union members, they are acting for the benefit of, and on behalf of, the union. All proceeds obtained from the action go to the union, since it sustained a loss as a result of the violation. Congress left no doubt about its intent to confer on union members the right to bring a private cause of action to enforce section 501(a). While an argument could be made that by omitting from the act the express authorization for the union to do the same, the preconditions set forth in section 501(b) clearly anticipate a right vested in the union to bring an action on its own initiative enforcing section 501(a). It would make no sense for Congress to vest jurisdiction in the federal courts over section 501 claims filed by union members, but allow the union asserting the same right to file only in state court. Rarely, if ever, does the existence or non-existence of federal question jurisdiction turn on the identity of the parties to the lawsuit. Jurisdiction turns on the identity of the parties only in cases in which some characteristic of a party, i.e. state residency, is the justification for establishing federal jurisdiction. Here, there is no logical reason to allow union members, but not the organization which they represent, and on whose behalf they act, to bring suit in federal court. Finally, although criminal and tort actions for conversion have traditionally been areas relegated to state authority, in the case of such acts committed by union officials, Congress clearly has declared the area one of federal concern subject to federal regulation. *Id.*

Taken as a whole, these factors clearly support the conclusion that Congress intended to create a private cause of action enforceable by the union. From that, it follows that the union's claim arises under federal law, creating jurisdiction under section 1337. See generally: *Serio v. Liss,* 189 F.Supp. 358 (D.N.J.1960), *aff'd* 300 F.2d 386 (3d Cir.1961).

On that basis, defendants' motion to dismiss for lack of standing or federal subject matter jurisdiction will be denied.

### Claims of preemption

Citing *Allis–Chalmers Corp. v. Lueck, (Lueck)* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), defendants argue that the union's state law claims of conversion and fraud are preempted by federal law under section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C.A. § 185, because they "necessarily involve an interpretation of ... the Defendants' rights, duties and obligations under the collective bargaining agreement which imposes those rights, duties and obligations under the Union's by-Laws." (Record document no. 4, p. 7)

Federal preemption in the area of labor law is not all-inclusive. Congress "has never exercised authority to occupy the entire field," but rather has exercised such authority only selectively. *Lueck, supra,* 471 U.S. at 208, 105 S.Ct. at 1909. State law claims which conflict "with federal law or would frustrate the federal scheme" are preempted, the Supreme Court has held, under section 301 of the LMRA.[9] *Id.,* quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). In practice, all state law claims which would require the court to analyze the collective bargaining agreement to ascertain the parties' intent are preempted. *Lueck, supra.* This interpretation bars not only those claims "founded directly on rights created by" the agreement but also those claims

9. Section 301 of LMRA provides that:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties ...
 29 U.S.C.A. § 185.

which substantially depend on an analysis of the agreement. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) and *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987).

Section 301 preemption is not limited to contract claims. Tort claims which would require the court to determine the intent of the contracting parties, e.g., claims that the parties failed to deal in good faith, are likewise preempted. *Lueck, supra*, 471 U.S. at 211, 105 S.Ct. at 1911. State law claims related to the interpretation of a collective bargaining agreement only tangentially or in a general way are, however, not preempted. *Lueck, supra*, 471 U.S. at 212 and 220, 105 S.Ct. at 1911–12 and 1915–16.

In the final analysis, a state claim is preempted if: 1) its determination is "inextricably intertwined" with an analysis of the terms of a collective bargaining agreement; or 2) the state law right asserted exists independent of the bargaining agreement and thus, cannot be waived or altered by contracting parties. *Lueck, supra*, 471 U.S. at 213, 105 S.Ct. at 1912. See also: *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 412, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988).

Under this analysis, the questions before us are: whether the union's state law claims for conversion of union property and breach of fiduciary obligation require us to delve into the meaning or intent expressed in the union's collective bargaining agreement or whether allowing such claims independent of the federally-based section 501 claim would frustrate congressional intent to establish a uniform body of law governing such agreements. See: *Lueck, supra*, 471 U.S. at 209, 105 S.Ct. at 1910 and *McClure v. International Union United Automobile, Aerospace and Agricultural Implement Workers of America*, 1992 WL 439786 (W.D.Mich. 1992), citing *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir.1991). We find neither to be the case.

No part of the collective bargaining agreement is referenced in plaintiff's claim. No reference to the agreement is necessary to resolve plaintiff's claims. All claims asserted are based on union bylaws precluding the transfer of a union-owned vehicle to a union official.

State law claims of fraud and conversion are asserted by the plaintiff. Under Pennsylvania law, to establish fraud, the plaintiff must prove that: 1) a representation was made; 2) which was material to the transaction at hand; 3) and was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (1994), citing W. Page Keaton, *Prosser and Keeton on the Law of Torts*, § 105 (5th ed. 1984) and *Restatement (Second) of Torts*, § 525 (1977).

"Conversion at common law is a tort by which the defendant deprives the plaintiff of his or her right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." *Chrysler Credit Corporation v. Smith*, 434 Pa.Super. 429, 643 A.2d 1098, 1100 (1994). Specific intent is not required. However, the plaintiff must establish that the defendant intended to exercise dominion or control over the goods which is, in fact, inconsistent with the plaintiff's rights. "Money may be the subject of conversion." *Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112, 114 (1987).

Both state law claims raise the same issue as plaintiff's federal claim, i.e. whether defendants violated union by-laws by effecting the transfer. See, generally: *McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir.1975). Neither will require this court to delve into the meaning or intent of the collective bargaining agreement. The agreement has nothing to do with the claims asserted.[10] See

---

10. By contrast, under the broader preemptive effect of ERISA, 29 U.S.C. § 1144(a), such claims would be preempted. See, e.g., *Justice v.*

*Bankers Trust*, 607 F.Supp. 527 (N.D.Ala.1985) (state law claims of fraud based upon suppression of material facts relating to employee benefit

generally: *Farmer v. United Brotherhood of Carpenters and Joiners of America*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (National Labor Relations Act does not preempt state law cause of action for intentional infliction of emotional distress). Cf. *McClure, supra*, (State law claims preempted because the court found that it could not determine whether allegedly improper redistricting and election were held in an improper manner without scrutinizing the collective bargaining agreement.)

On that basis, we conclude that plaintiff may proceed on the state law claims asserted and will deny defendant's motion to dismiss on that ground.

### Statute of limitations

■ Defendants next argue that the claims asserted are time-barred. There is no statute of limitations set forth in LMRDA for claims arising under Title V. When federal law fails to "provide explicitly for a limitations period for a federal action," it is understood to be Congress' intent that the courts borrow "the most closely analogous statute of limitations under state law." This is not true in every case, however. "In some circumstances ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 and 161, 103 S.Ct. 2281, 2287 and 2289, 76 L.Ed.2d 476 (1983). In *DelCostello*, the Supreme Court adopted what it found to be the most closely analogous federal limitations period. The Court rejected the most relevant state statutory limitations period on the ground that it was too long and would be, for that reason, at cross-purposes with the federal interest in prompt resolution of such claims.

Relying on *DelCostello, supra*, defendants argue for the application of the six-month limitation period to the claims presented here. Contrary to defendants' argument, *DelCostello, supra*, does not require application of the six-month limitations period held applicable there for claims arising under other provisions of federal labor law. We read the Court's opinion as requiring an analysis of the issues to determine what statute, federal or state, is most closely analogous to the federal labor claim presented, and coupled with that consideration, what limitations period best serves the federal interests at stake. On this point, the Court stated:

> [O]ur holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.... On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods.

*DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294.

■ Plaintiff argues for the application of the equitable doctrine of laches on the ground that its claims are, in essence, equitable in nature.

There is considerable support for that argument. Other courts have held that because the relief sought under section 501 is equitable in nature, such actions are not governed by any statutory period, but rather by the federal doctrine of laches. See: *Erkins v. Bryan*, 785 F.2d 1538 (11th Cir.1986), *cert. denied*, 479 U.S. 960, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986) and *Yablonski v. United Mine Workers*, 80 L.R.R.M. (BNA) 2594 (D.D.C.1972) (1972 WL 810). In *Yablonski*, the District Court for the District of Columbia held that because union members were in

plan preempted by ERISA); *District 65, UAW v. Harper & Row Publishers, Inc.*, 576 F.Supp. 1468, 1487 (S.D.N.Y.1983) (state common law claims of fraud, conversion, unjust enrichment, and tortious interference with contract preempted by ERISA); *Ogden v. Michigan Bell Telephone*

*Co.*, 571 F.Supp. 520, 524 (E.D.Mich.1983) (state common law fraud claim dismissed as preempted by ERISA); *Whitaker v. Texaco, Inc.*, 566 F.Supp. 745 (N.D.Ga.1983) (state law misrepresentation and breach of fiduciary duty claims preempted by ERISA).

essence seeking to recover sums allegedly misappropriated by the union officials, it was in the nature of an equitable action. "[T]he present complaint does not seek damages in the legal sense but rather requests an equitable accounting wherein damages may be determined." *Id.* "The remedies of a beneficiary of a trust against an errant trustee are traditionally within the exclusive jurisdiction of equity. The mere fact that an accounting may result in a dollar judgment does not, in and of itself, make a case a legal action." *Id.* The court found further support for its position in the legislative history, citing comments by Senator Kennedy, *Id.* citing 105 Cong.Rec. 17900 (1959) and by Senator Goldwater, to the general effect that section 501 imposes a fiduciary obligation on union officers entrusted with union assets. *Id.,* citing 105 Cong.Rec. 17903–4 (1959). In further support of its position, the court cited the impracticality of imposing a definite statutory period, stating that it was conceivable, if not probable, that the discovery of missing assets would in most cases not occur until there was a transfer in union leadership, something which may not occur within the standard, two or three year statutory limitations period. In such cases, the court noted, wrongs would go unremedied, because they would go undiscovered until long after the limitations period had run. Such a result would be inconsistent with congressional intent. In *Erkins, supra,* 785 F.2d at 1543, the Eleventh Circuit reached the same conclusion for the same reasons.

We agree that the claim most analogous to the section 501 claims presented here is an equitable accounting and on that basis, find that the timeliness of plaintiff's action is governed by the doctrine of laches.

██ There is no assertion of prejudice to the defendants by plaintiff's delay in filing. Further, this action was filed not long after the particulars of the alleged wrongdoing came to plaintiff's attention. Plaintiff argues convincingly that discovery of the alleged misappropriation was delayed by defendants' concealment of the particulars of the transaction, by defendants' creating a paper trail of deception, i.e. by the failure to disclose at the time of the transfer that Greenawalt was given a check for the estimated value of the automobile plus sales tax, which he in turn endorsed back to the union, and by counsel's assurances that the transfer was legal and proper.

We find no basis at this juncture for dismissing plaintiff's claim as untimely and will deny defendants' motion to dismiss on that ground.

### Atkinson Rule

██ Defendants also seek dismissal on the ground that this action is barred by the *Atkinson* rule, a reference to the United States Supreme Court holding in *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249, 82 S.Ct. 1318, 1325–27, 8 L.Ed.2d 462 (1962). *Atkinson* and its progeny, (See also: *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981) (Individual strikers cannot be sued for money damages for the alleged breach of a collective bargaining agreement, even if the strike was not union-sanctioned.) Union representatives, including counsel for the union, are not liable in money damages for acts performed in negotiating and enforcing a collective bargaining agreement or for the breach of that agreement. Such liability exists against the union only. That rule plainly has no application to the facts before us. No part of plaintiff's action relates to a collective bargaining agreement. Further, insulating union representatives from the claims asserted here, i.e. the alleged misuse of union assets, would run contrary to basic logic.

### Rule 11

Our denial of defendants' motion to dismiss moots their motion for Rule 11 sanctions.