**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Container Maintenance Refrigeration Repair Employees Local 1970, AFL–CIO, Plaintiffs,**

v.

**VIRGINIA INTERNATIONAL TERMINALS, INC., Hampton Roads Shipping Association, Ceres Marine Terminals, Inc., and Edward L. Brown, Sr., Defendants.**

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Steamship Clerks Local 1624, AFL–CIO, Plaintiffs,**

v.

**HAMPTON ROADS SHIPPING ASSOCIATION, and Edward L. Brown, Sr., Defendants.**

Action Nos. 2:95cv956, 2:95cv996.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 4, 1996.

**656**

Thomas F. Hennessy, III, SuAnne L. Hardee, Hardee & Hennessy, P.C., Chesapeake, VA, for plaintiffs.

Thomas M. Lucas, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendants Virginia International Terminals, Inc., Hampton Roads Shipping Association, and Ceres Marine Terminals, Inc.

Larry W. Shelton, Goldblatt, Lipken & Cohn, P.C., Norfolk, VA, Kevin Marrinan, Gleason & Matthews, New York City, for defendant Edward L. Brown, Sr.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

These two cases are before the court for resolution of defendant Edward L. Brown's motions for summary judgment. For the reasons which follow, the motions are **GRANTED**.

### I. Factual and Procedural History

Both of these cases involve yet another labor dispute between plaintiffs, Local 1624 and Local 1970 of the International Longshoremen's Association ("ILA"), their employers, and one international union official.[1] This time, Local 1624 and Local 1970 are aggrieved by the allegedly improper procedure by which the ILA adopted an apprentice program. The apprentice program altered the terms of the Locals' collective bargaining agreements ("CBAs") by permitting employers to pay lower wages and by denying holiday pay to union members with relatively few years on the job, ostensibly as a result of their need for training. Both Local 1624 and Local 1970 object to the manner in which the new program was adopted, and both claim injury to their members as a result of its implementation. This time, the Locals sued separately. Local 1624 brought its claims against ILA International Vice President Edward L. Brown, and the Hampton Roads Shipping Association ("HRSA") (case no. 2:95cv996). Local 1970 sued Brown, the HRSA and two employers, Ceres Marine Terminals Inc. ("Ceres") and Virginia International Terminals ("VIT") (case no. 2:95cv956).

Among the various claims asserted, the two Locals each sued Brown under section 501(a) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 501(a). The Locals assert that Brown breached the fiduciary duty imposed on him by the LMRDA, when he approved the apprentice program in violation of the procedures outlined in the international union's constitution.

Both Locals allege similar conduct on the part of Brown. Principally, they contend that he failed to obtain the written approval of international union officers before endorsing the apprentice program, and that he failed to conduct a proper vote of the aggregate membership of the covered locals. These actions by Brown are alleged to violate Article 23 of the ILA Constitution. In the case of Local 1970, Brown is also alleged to have deliberately misled the Local about its members' participation in the program, and refused to process grievances concerning the matter. All of this conduct is alleged to violate the fiduciary duty imposed on Brown,

---

1. The parties have been before the court with nearly identical claims four times in the past year. In addition to the present actions, *see, International Longshoremen's Ass'n, Steamship Clerks Local 1624 AFL–CIO v. Virginia Int'l Terminals,* 914 F.Supp. 1335 (E.D.Va.1996) (denying motion to dismiss); *International Longshoremen's Ass'n, Steamship Clerks Local 1624 AFL–CIO v. Virginia Int'l Terminals, Inc.,* No. 2:95cv274 (E.D.Va. May 22, 1995) (unpublished order dismissing a similar suit as untimely).

as an international union officer, by section 501(a) of the LMRDA.

█ Brown moved to dismiss both actions. On April 16, 1996, the court heard oral argument on the motions to dismiss. At the hearing, the parties were instructed to file supporting affidavits on whether the plaintiffs had properly exhausted internal remedies. Because all the parties submitted additional materials,[2] the court now construes and decides Brown's motions to dismiss as motions for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b) (If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.").

## II. Summary Judgment Standard of Review

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Such facts must be presented in the form of exhibits and sworn affidavits. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

## III. Analysis

Brown's motions are factually and legally similar to a motion decided by the court in another case involving the same parties. In that earlier case, Local 1970 and Local 1624 jointly sued Brown, the ILA, and several of their employers because of their allegedly improper implementation of a flex-time modification to the Locals' CBAs. *International Longshoremen's Ass'n, Steamship Clerks Local 1624 AFL–CIO v. Virginia Int'l Terminals,* 914 F.Supp. 1335 (E.D.Va.1996) (hereinafter "the flex-time case").

Brown also moved to dismiss that action, arguing that the local unions were not proper plaintiffs in an action under section 501 of the LMRDA, and that the statute was not broad enough to reach the conduct alleged in the complaint. The court denied that motion to dismiss, ruling that the plaintiffs were properly before the court, and the conduct alleged, if proven, would be sufficient to state a claim under section 501. *Id.* at 1342.

The main difference between these motions and the one previously decided is the issue of exhaustion of internal remedies before a local union brings suit under section 501(a) of the LMRDA. In the flex-time case, the exhaustion issue was not raised, presumably because the dispute had already been appealed to the Contract Board, a joint arbitration panel composed of both local and international union members as well as employer representatives. The Contract Board is the acknowledged arbitral body set up by the parties to resolve disputes related to the interpretation of changes in their CBAs. In this case, Brown alleges that neither Local has made any internal complaint to the international union itself, and the precise question presented is whether the Locals are required to do so before bringing this action.

Brown first reiterates his argument from the flex-time case that an internal demand for relief is required by the provisions of

---

2. Both sides filed affidavits and supporting documentation. Brown also filed a so-called "reply affidavit", which though styled an affidavit was nothing more than attested legal argument in support of his position. As a result, plaintiffs

filed a Motion for Oral Argument, apparently to rebut the argument raised by Brown's superfluous filing. The court finds a second oral argument unnecessary to the disposition of Brown's motion.

501(b) of the LMRDA. Section 501(b) requires that before bringing suit to enforce the duties imposed by section 501(a), individual union members must make a demand on the union to sue or recover damages, or an accounting or other appropriate relief, before bringing the action. In addition, individual plaintiffs must obtain leave of court upon a showing of "good cause" to bring the suit. 29 U.S.C. § 501(b).

This court held in the flex-time case that these restrictions did not apply to suits by the local union itself, because jurisdiction for such suits derived from 28 U.S.C. § 1337, rather than section 501(b). *Local 1624*, 914 F.Supp. at 1339–40; *see Operative Plasterers & Cement Masons v. Benjamin*, 776 F.Supp. 1360, 1363 (N.D.Ind.1991); *Teamsters, Chauffeurs, Warehousemen & Helpers, Local 764 v. Greenawalt*, 880 F.Supp. 1076, 1080–81 (M.D.Pa.1995). Citing the *Benjamin* opinion, this court wrote, "§ 501(b) is properly read as both creating a cause of action for individual members, and limiting federal court jurisdiction over suits by individual members. Hence nothing in the provisions of § 501(b) affects a union's right to sue in federal court under § 501(a)." *Local 1624*, 914 F.Supp. at 1340.

Brown raises an additional argument in support of the plaintiffs' duty to exhaust internal remedies. First, he cites the Supreme Court's decision in *Clayton v. United Auto, Aerospace, and Agricultural Implement Workers*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In *Clayton*, the Supreme Court described a three-factor test for determining when exhaustion of internal remedies would be excused in litigation against the union or one of its officers. In exercising its discretion to excuse exhaustion, *Clayton* instructs the court to consider 1) whether union officials are so hostile to the claim that a fair hearing would be impossible, 2) whether the internal remedies would be inadequate, and 3) whether exhaustion of internal procedures would unreasonably delay judicial resolution of the merits of the claim. *Id.* at 689, 101 S.Ct. at 2095.

Brown contends that *Clayton* requires exhaustion of internal union remedies, unless one of these three criteria justifies non-ex-

haustion, and that it is the plaintiffs' burden to allege facts which establish that intra-union remedies are inadequate. Plaintiffs argue that *Clayton* involved *fair representation* litigation under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Some courts have specifically held that a *Clayton*–type analysis does not apply to suits involving claims for breach of a union officer's fiduciary duty under section 501 of the LMRDA. *See, e.g., Cowger v. Rohrbach*, 868 F.2d 1064, 1067 (9th Cir.1989) (discussing the difference between fair representation and fiduciary duty claims and holding the latter did not require full exhaustion); *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1252 (5th Cir.1972) (holding that suits under 501(a) did not require full exhaustion, but "good cause" determination under 501(b) might be affected by resort to internal remedies).

These courts concluded that the demand for suit required by section 501(b) was not the same as the exhaustion requirement required in fair representation litigation. Instead of full exhaustion, a section 501 action required only a request by individual union members for their union to bring court action or seek an accounting or other appropriate relief against the potential defendant, and a failure by the union to do so.

These courts, however, were not faced with an "all or nothing" decision regarding exhaustion. They simply determined that the congressional preference for union resolution of fiduciary duty claims under section 501 could be satisfied by something less than the full exhaustion required for fair representation claims. In the present case, Brown argues that since the pre-suit demand for relief required by section 501(b) does not apply, as a result of the court's holding in the flex-time case, the court should look to the *Clayton* factors in order to ensure that plaintiffs have attempted to resolve this dispute internally before bringing it in federal court.

The court finds this argument persuasive. The LMRDA contains a provision captioned "Protection of Right to Sue," which provides in relevant part:

No labor organization shall limit the right of any member thereof to institute an ac-

tion in any court, ... *Provided that any such member may be required to exhaust reasonable hearing procedures* (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organization or any officer thereof.

29 U.S.C. § 411(a)(4). The ILA Constitution contains such a requirement in section 5, which provides:

No member or Local Union shall institute any civil action, suit, or proceeding in any court against the ILA, ... or any officer or member of the ILA ... on account of any controversy for which a remedy by trial and appeal is provided for in this Constitution, unless and until he has first exhausted all such remedies of trial and appeal. The prohibition contained herein shall not extend beyond four (4) months from the date that a member or Local Union initiates a controversy by filing with the proper individual.

Brown Ex. 1(c). Because the LMRDA permits unions to require exhaustion, and the ILA Constitution requires it of both members *and* local unions, plaintiffs must first exhaust their internal remedies before bringing this action, unless application of the *Clayton* factors warrants relieving them of this duty.

Plaintiffs argue that section 411(a)(4) of the LMRDA does not apply to suits under section 501(a). They cite several cases which have so held. *See Purcell v. Keane,* 406 F.2d 1195, 1199 (3d Cir.1969); *Horner v. Ferron,* 362 F.2d 224, 231 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966); *Holdeman v. Sheldon,* 204 F.Supp. 890, 895–96 (S.D.N.Y.), *aff'd,* 311 F.2d 2 (2d Cir.1962). Again, the difficulty with this argument is that these cases found section 411(a)(4) did not require exhaustion in suits under section 501(a) *because* section 501(b) contained an express requirement that the individual make a demand on the union to sue or seek other appropriate relief. Because Congress explicitly conditioned the availability of the section 501(a) remedy on an individual member's demand for internal relief in section 501(b), these courts held that the exhaustion provision in section 411(a)(4) did not apply.

Applying precisely the same analysis as the courts considering application of *Clayton* to section 501(a) suits by individual members, these courts did not hold that no pre-suit demand for internal relief was required by local unions. Rather, each concluded that the explicit provisions of section 501(b) preempted section 411(a)(4)'s requirement that internal remedies be exhausted by individual members.

This court has already ruled that the internal demand for relief required by section 501(b) does not apply to suits by the local union itself, because by its terms that section limits federal jurisdiction over individual members' suits. *Local 1624,* 914 F.Supp. at 1339–40. Consequently, the court must look to section 411(a)(4) and the *Clayton* analysis to determine the scope of exhaustion required for a local union's suit under section 501(a). To do otherwise would circumvent clear congressional intent to give the international union officials the first opportunity to equitably resolve internal union disputes involving the international organization.

This issue was neither presented nor decided in the flex-time case. Neither was it addressed in the other court decisions on the subject. In both *Benjamin* and *Greenawalt,* for example, the action was by the local union against one of its own officers. In such a circumstance, exhaustion is a meaningless concept because the local union which established the internal procedures is the party seeking relief. Here, however, the suits are brought by local unions against an officer of the international union. Consequently, a finding that plaintiffs must exhaust their internal remedies by first presenting their claims to the international ILA is not inconsistent with any decision granting a local union the right to sue under section 501(a).

■ The language of section 411(a)(4) expresses a congressional preference for internal resolution of intra-union disputes. According to the Fourth Circuit, "it is an expression of policy that places upon the federal courts 'the duty to formulate federal law regarding a union member's obligation to exhaust the internal union remedies before seeking judicial vindication of those

rights'" conferred by federal law. *Wiglesworth v. Teamsters Local 592*, 552 F.2d 1027, 1029 (4th Cir.1976). Courts have repeatedly affirmed this principle that federal intervention in matters of union governance should be undertaken "with great reluctance." *Stelling v. International Bhd. of Elec. Workers*, 587 F.2d 1379, 1387 (9th Cir. 1978); *Brink v. DaLesio*, 667 F.2d 420, 424 (4th Cir.1981) (finding that Congress intended "minimum interference in the internal affairs of unions" under section 501). In keeping with this federal policy, the court **FINDS** that, where required by the union's constitution or bylaws, exhaustion of internal remedies as permitted by section 411(a)(4) is a necessary predicate to a local union's cause of action against the officer of an international union, under section 501(a) of the LMRDA.

Of course, a holding that exhaustion is required does not end the inquiry. The plaintiffs argue that they have exhausted their remedies to the extent required under the ILA Constitution, or in the alternative that exhaustion should be excused, under the factors established by *Clayton*. In this regard the two cases contain different assertions, which were extensively documented by the supplemental filings of the parties.

### A. Plaintiffs' Allegations Regarding Exhaustion

#### 1. Local 1624

■ In the case involving Local 1624, the complaint contains no allegation of exhaustion, nor any alleged facts which would support a finding that exhaustion would be futile. In response to the court's request for documentation of any efforts at exhaustion,

Local 1624 submitted the affidavit of its president, Charles Capps. Capps admits that the present action was filed before Local 1624's objections were presented to any internal union body. He claims the early filing was required to avoid the running of the six-month statute of limitations. Capps Aff. ¶ 5.[3]

■ The Fourth Circuit has held that tolling of the statute of limitations is measured by an objective standard. Thus, the statutory period is not extended "indefinitely" as a result of the claimant "bombarding [the] union with tiresome requests for needless review." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991). This holding, however, is hardly applicable to the facts before the court. As Capps attests, the federal action was brought prior to Local 1624 airing its objections to the apprentice program before any internal grievance panel.

Local 1624 apparently rests its exhaustion claim on the fact that it agreed to extend the time for Brown, and the HRSA, to answer this lawsuit, anticipating internal resolution of the problem. Capps attests that during the time period between the filing of this suit and the extended time for defendants to answer, a meeting of the Contract Board was held. Capps Aff. ¶ 5. During the meeting, defendant Brown moved to include all the locals in the apprentice program and Capps objected. *Id.* Capps then complains that the board approved the motion over his objection and that "as of the time by which Defendant Brown was required to file his legal answer, there had been no change in the vote." *Id.* Local 1624 basically asserts that the single adverse vote of the Contract Board which *implemented* the program over its objections was all that was required to

---

**3.** This claim, which was reiterated by counsel at oral argument, is incorrect. It has long been the law of this Circuit that legitimate pursuit of required internal union remedies tolls the statute of limitations. *See, e.g., Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir.1988); *Kolomick v. United Steelworkers of America, Dist. 8*, 762 F.2d 354, 356 (4th Cir.1985); *Walker v. Teamsters Local 71*, 714 F.Supp. 178, 188 (W.D.N.C.1989). In *Kolomick*, the Fourth Circuit held that where a claimant chooses to pursue an *alternative remedy* in a parallel administrative proceeding that choice does not toll the limitation period of a federal statutory claim. *Kolomick*, 762 F.2d at

356. Here, however, no parallel proceeding exists. The internal procedure cannot be pursued simultaneously with this federal statutory claim. Quite the contrary, exercise of those internal rights is a precursor to the federal justiciability of the claim. In addition, unlike the NLRB proceeding in *Kolomick*, the internal grievance procedure here is intended to provide the same relief sought in this action. *See Trent*, 837 F.2d at 659 (finding statute tolled where administrative appeal could not be "pursued independently" and was intended to confer same relief as federal fair representation claim).

exhaust the available internal union remedies.

Brown's submission in support of his motions includes his own affidavit, and that of ILA President, John Bowers, as well as relevant sections of the ILA Constitution. Brown attests that despite numerous meetings of the Contract Board since the enactment of the apprentice program, Capps "has never submitted a written grievance alleging a breach of the collective bargaining agreement." Brown Aff. ¶ 12. In addition, anticipating wrinkles in the administration of the program, the parties set up a committee specifically to resolve disputes related to the apprentice program. *Id.* ¶ 13. Capps serves on this committee, and has never filed a written grievance with it. *Id.* Brown also attests that Local 1624 has not filed any grievance with the Local Industry Grievance Committee ("LIGC"), another body set up to resolve disputes related to the Master Agreement between the ILA and employers. *Id.* ¶¶ 15, 16. These three bodies—the Contract Board, the Apprentice Program Committee and the LIGC—all exist for the purpose of keeping union disputes out of federal court. *Id.* ¶¶ 9, 13, 15. Local 1624 has yet to formally file its grievance with any of them. *Id.* ¶¶ 13, 15, 16.

Further, ILA President Bowers states that Local 1624 has done nothing to initiate internal review of Brown's alleged breaches of the ILA Constitution. Bowers Aff. ¶ 6. His affidavit, supported by excerpts from the ILA Constitution itself, makes clear that complaints related to such violations must first be brought before the ILA Executive Council. Bowers Aff. ¶¶ 7, 8; Brown Ex. 1(b), 1(d). Capps claims this internal grievance procedure is only required if the party is seeking to impose a disciplinary remedy provided for by the Constitution itself. Capps Aff. ¶ 6. Because the Local 1624 action does not seek to discipline Brown for his alleged violation, Capps asserts that internal exhaustion is not required. *Id.*

The court finds this is too narrow a reading of the exhaustion provisions of the ILA Constitution. The language of that section, cited verbatim above, provides that no local union shall institute "*any civil action,* suit, or proceeding in any court against the ILA, . . . or any officer or member of the ILA . . . on account of *any controversy* for which a remedy" is provided, unless it first exhausts intra-union procedures. Brown Ex. 1(c). Although Local 1624's civil action may not seek the precise remedy provided under the ILA Constitution, it is certainly brought "on account of [a] controversy for which a remedy is provided." *Id.*

■ The undisputed facts in the record indicate that Local 1624 has filed no formal grievance with the ILA Executive Council, the LIGC, the Contract Board, or the Apprentice Program Committee. Neither has it presented any facts which would justify excusing exhaustion under the factors enumerated in *Clayton.* Accordingly, Brown's motion for summary judgment is **GRANTED,** and he is **DISMISSED** as a party to this action.

### 2. Local 1970

■ Local 1970's complaint does contain factual allegations related to exhaustion of internal remedies. Local 1970 also submitted the affidavits of its president, Melvin Sidwell, and a local union member Walter Hunt, as well as supporting documents.

President Sidwell's efforts to resolve his Local's objections to the apprentice program were on two fronts. He sent a letter of complaint to ILA President Bowers, and he sought arbitral rulings from the Contract Board regarding the applicability of the apprentice program to two members.

Local 1970's objections to the international ILA were outlined in a letter which Sidwell mailed to Bowers on September 23, 1995. Brown Ex. 10. The letter summarized Local 1970's complaints related to the apprentice program, and the way it was approved. Sidwell attests that "to date he has received no response, or copy of a response from the ILA" resulting from this complaint. Sidwell Aff. ¶ 6.

Although this letter may have put the international union on notice of Local 1970's complaint, it fails to establish even the commencement, much less the exhaustion of internal union review of the dispute. The

letter does not even mention the alleged violations of the ILA Constitution which underlie Local 1970's complaint against Brown. Although it does mention Brown's alleged misrepresentations, the bulk of the letter describes individual grievances of the few local union members who had complained about their inclusion in the program. Brown Ex. 10 at 2. These grievances, which are discussed in detail below, were not the proper subject of action by the international union's Executive Council. Consequently, the precise conduct which Local 1970 complains of now was never brought to the attention of the ILA Executive Council, either formally or informally, prior to the Local filing this action.

Local 1970 did pursue individual grievances for some of its members. The workers, Walter Hunt and Jim Holmes, complained that they should not have been included in the apprentice pay scheme because they had experience in the industry prior to its implementation date. Sidwell Aff. ¶ 6, Ex. C; Hunt Aff. ¶ 1. Both had taken long leaves of absence and returned shortly before the program began. These grievances, which have been resolved in favor of the workers, concerned the interpretation of the apprentice program, not its implementation. Brown Aff. ¶¶ 12–18. Their resolution does not go to the heart of Local 1970's complaint against Brown— that he acted improperly in approving the apprentice program without following ILA constitutional strictures. Indeed, a review of the court's order in the flex-time case makes clear that the claim against Brown under section 501(a) must arise principally from internal union affairs, namely his violations of the international union constitution. Local 1970 cannot allege such a claim in order to invoke the court's jurisdiction in one case and then ignore in another case the internal procedure established for resolving it—namely the ILA Executive Council.

Local 1970 also maintains that it submitted its grievance to the LIGC, and that Brown refused to process it. Brown's undisputed affidavit, however, states that the grievance submitted was precisely the same individual grievance pending before the Contract Board. Brown Aff. ¶ 24. This type of grievance was not subject to review by the LIGC; accordingly, Brown presented it to the appropriate authority which resolved it favorably to the members' interests. Brown Aff. ¶¶ 18, 24.

Local 1970 also reiterates the argument, rejected above, that it did not have to exhaust the international union's grievance procedure because it did not seek to impose any disciplinary action on Brown. For the reasons articulated above, this argument is without merit.

In addition, Local 1970 has failed to allege facts sufficient to excuse exhaustion under *Clayton.* There is no evidence that international union officials are so hostile to the claim that a fair hearing would be impossible, or that exhaustion of internal procedures would unreasonably delay judicial resolution of the claim. Finally, the internal remedies would be adequate to resolve Local 1970's claim.[4] *Clayton,* 451 U.S. at 689, 101 S.Ct. at 2095.

Because Local 1970 has not aired its complaints against Brown before the ILA Executive Council, and has presented no justification for excusing the pursuit of internal relief, Brown's motion for summary judgment is **GRANTED.** Edward L. Brown is **DISMISSED** as a party to this action.

### *IV. Conclusion*

Both Local 1624 and Local 1970 brought their claims against Edward L. Brown prematurely. Section 501(a) of the LMRDA, to the extent it confers rights on local unions to bring suit in federal court, is subject to the LMRDA's general exhaustion provision set out in 29 U.S.C. § 411(a)(4). Neither of these Locals has exhausted the internal remedies available under the ILA Constitution, or the Master Contract governing the relationship among the parties. Nor have they put forth facts which would justify excusing

---

4. Indeed, the Contract Board has already resolved the individual complaints asserted in Local 1970's action, awarding back pay to both members who sought clarification of their status under the apprentice program. Brown Aff. ¶ 18; Hunt Aff. ¶ 11.

exhaustion under the three factors enumerated by the Supreme Court in *Clayton*. Accordingly, Brown's motions for summary judgment in both cases are **GRANTED,** and Brown is **DISMISSED** as a defendant in these actions.

It is so **ORDERED.**